UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.　　　　　　　　　　　　　　　　　　Case No. 21-CR-50

ROBERT NARVETT,

    Defendant.

## REPORT AND RECOMMENDATION

**1. Background**

Robert Narvett engaged in a Ponzi scheme under which he led victims to believe he was investing their money when in fact he was largely using the money to pay his own expenses or to pay off earlier victims of the scheme. (ECF No. 32 at 2-3.) He also obtained unauthorized loans in the names of the victims and used the proceeds for his own benefit. (ECF No. 32 at 3-4.) "As a result of this scheme, Narvett fraudulently obtained, and attempted to obtain, over $1,500,000." (ECF No. 32 at 4.)

Narvett pled guilty to one count of wire fraud and one count of promotion of money laundering. (ECF No. 32 at 4-5.) With respect to restitution, the plea agreement stated:

> The defendant agrees to pay restitution as ordered by the court. The parties agree to recommend to the sentencing court that the defendant pay restitution of $1,003,222.45. The parties understand and acknowledge that the victims may have additional documentation of restitution due and owing in excess of that amount that may be considered by the Court.

(ECF No. 32 at 12, ¶ 27.)

The Honorable William C. Griesbach sentenced Narvett to 180 months in prison and ordered him to pay the undisputed portion of the restitution—$1,003,222.45. (ECF No. 61 at 1.) That figure was based on the loss that an FBI forensic accountant was able to determine from reviewing Narvett's bank records (ECF No. 63 at 1) and was broken down as follows:

| Victim: | Amount: |
| --- | --- |
| Denise Anderson | $236,675.45 |
| Bruce and Christine Romenesko | $41,225.84 |
| Cherri and Tim Thern | $38,357.10 |
| Bruce and Sandra Miller | $362,105.00 |
| Darla Meshke | $194,215.00 |
| Luke and Karen Weinschrott | $54,894.06 |
| Estate of Adam Smakosz | $75,750.00 |

In the government's view, "Because of the nature of Defendant's fraud, however, which included dealing in cash and through a variety of financial institutions, the parties understood that the FBI's forensic accounting was not likely to be a complete picture of the fraud." (ECF No. 63 at 1.) Thus, Judge Griesbach held open the determination of the remainder of the restitution required. (ECF No. 61 at 2); *cf. Dolan v. United States*, 560 U.S. 605, 611 (2010) (noting that the court may order restitution

beyond the 90-day deadline set forth in 18 U.S.C. § 3664(d)(5)). When Judge Griesbach recognized that the restitution dispute was more complicated than the parties anticipated, he referred the matter to this court pursuant to 18 U.S.C. § 3664(d)(6). Prior to doing so he rejected Narvett's argument that the plea agreement precluded the government from having any role in presenting evidence to determine any additional amount he owed. (ECF No. 61 at 2.)

United States Probation reviewed documents of the victims and recommended that Narvett be ordered to pay $2,049,496.63 in restitution. (ECF No. 63 at 2.) The court received roughly 500 pages of documents from the government regarding the restitution requests of various victims. (ECF Nos. 71-75.) The court held a hearing on the matter on February 2, 2023.

**2. Applicable Law**

Under the Mandatory Victim Restitution Act of 1996 (MVRA), 18 U.S.C. § 3663A, "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3663A(f)(1)(A). "The amount of restitution is 'limited to the actual losses caused by the specific conduct underlying the offense, and, like the loss amount, the government must establish that by a preponderance of the evidence.'" *United States v. White*, 883 F.3d 983, 992 (7th Cir. 2018) (quoting *United States v. Orillo*, 733 F.3d 241, 244 (7th Cir. 2013)); *United States v. Shepard*, 269 F.3d 884, 887 (7th

Cir. 2001) ("restitution under § 3663A is limited to losses on the counts of conviction") (citing *United States v. Behrman*, 235 F.3d 1049 (7th Cir. 2000); *United States v. Martin*, 195 F.3d 961, 968 (7th Cir. 1999)).

Narvett was convicted of wire fraud in violation of 18 U.S.C. § 1343. The wire fraud statute encompasses a scheme to defraud. *See United States v. Belk*, 435 F.3d 817, 819 (7th Cir. 2006) (discussing 18 U.S.C. § 1341). Thus, for purposes of identifying victims and calculating restitution under the MVRA, the court must consider the overall scheme recounted in the plea agreement and not merely the individual overt act (*i.e.*, count one) to which Narvett pled guilty. *See United States v. Belk*, 435 F.3d 817, 819-20 (7th Cir. 2006).

The government has the burden of proving the amount of each victim's loss by a preponderance of the evidence. 18 U.S.C. § 3664(e).

3. **Narvett's General Objections**

   3.1. **Transactions that Predate the Indictment**

   The indictment alleged that Narvett engaged in a scheme "[b]eginning by at least January 2014, and continuing through at least October 2019." (ECF No. 1 at 1.) In support of their restitution claims, victims frequently point to transactions that occurred before that period. Narvett argues that all claims related to any transaction that predates the indictment period should be excluded from the court's restitution award. (ECF No. 84 at 2.)

The government acknowledges that losses incurred before the charged scheme are not properly included in a restitution order. (ECF No. 85 at 1 (citing *United States v. Flaschberger*, 408 F.3d 941, 943 (7th Cir. 2005).) But it argues that it was not until Narvett's Ponzi scheme collapsed that the victim's investments became losses for purposes of restitution.

The nature of a Ponzi scheme is such that victims do not suffer losses until the scheme collapses. In fact, prior to the collapse of the scheme, victims may enjoy significant returns. This is precisely why such schemes may persist for years. In fact, the outsized paper returns, or even actualized returns funded by new investors, serve to attract new victims to the scheme, allowing the fraud to perpetuate.

That is not to say that a crime does not occur until the scheme collapses. But for purposes of restitution what is material is the timing of the loss. An "investment" in a Ponzi scheme is not a loss until the scheme collapses. Therefore, the court rejects Narvett's argument that transactions that preceded the period alleged in the indictment must be excluded from any restitution award.

### 3.2. Transfers to Narvett's Son

Narvett also argues that documents that reflect transfers to Narvett's son must be excluded. (ECF No. 84.)

The fact that some checks were made payable to Narvett's son, rather than Narvett, was consistent with Narvett's scheme. He used his son as a strawman, or at

best a pass-through, in an attempt to further his scheme and evade detection, particularly by the S.E.C. following a civil action by that agency. (*See, e.g.*, ECF No. 73 at 2 (document purporting to be a loan between Meshke and Narvett's son and accompanying corresponding check from Meshke to Narvett); *cf. e.g.*, ECF Nos. 73 at 87; 74 at 13.) Moreover, the record establishes that Narvett's son was a victim of Narvett's scheme, and Narvett opened bank and credit accounts in his son's name to further the scheme. (ECF No. 47.) There is no evidence that any victim ever legitimately transferred any money to Narvett's son. Transactions that purportedly involved Narvett's son are properly within the scope of the restitution order.

4. **Evidentiary Basis for Victims' Claims**

While the court does not doubt the veracity of any victim's claim, it is constrained by the federal law regarding restitution and applicable evidentiary burdens. In other words, the court cannot just accept what a victim says simply because the court believes them. The court needs proof.

Proof may come in a variety of forms—testimony, documents, affidavits, or unsworn declarations. However, documents by themselves are usually insufficient. A document generally must be authenticated. *See* Fed. R. Evid. 901. That is, the court must be assured that something is what the proponent says it is. *See* Fed. R. Evid. 901(a). The usual means of authenticating a document is testimony of a witness with first-hand knowledge regarding the document. *See* Fed. R. Evid. 901(b)(1). Alternatively,

documents may be authenticated by an affidavit or an unsworn declaration of a person with knowledge of the document.

Jody Aschenbrenner and Luke Weinschrott both testified at the restitution hearing and submitted a "Declaration of Victim Losses," as well as supporting documents. (ECF Nos. 74-1; 74-3.) Darla Meshke submitted documents and testified at the hearing. (ECF No. 73.) These victims' declarations and testimony are sufficient to put their claims properly before the court. Bruce and Sandra Miller submitted various documents as well as a Victim Impact Statement supporting their restitution claim. (ECF No. 75.) Because that statement was signed under penalty of perjury, the court accepts it as a declaration sufficient to present his claim and authenticate the documents submitted.

Denise Anderson (ECF No. 74), Taylor Cole (ECF No. 74-4), and Timothy Thern (ECF No. 74-5) submitted documents but did not testify at the hearing or submit any sort of affidavit or declaration authenticating the documents they submitted. Bruce Romenesko submitted a Declaration of Victim Losses, as well as hundreds of pages of documents. (ECF Nos. 73-1; 73-2; 73-3.) However, his declaration was unsigned. (ECF No. 73-1 at 2-6.)

At the restitution hearing the court inquired of the government and was advised that, consistent with 18 U.S.C. § 3664(d)(2)(A)(vi), United States Probation provided each victim with the opportunity to submit an affidavit relating to the amount of his or

her losses. In the absence of sufficient authenticating evidence, the government has failed to prove these victims' losses by a preponderance of the evidence. *See United States v. Ferdman*, 779 F.3d 1129, 1140 (10th Cir. 2015). This is not to say that hearsay has no place in a restitution finding. *Cf. United States v. Belk*, 435 F.3d 817, 819 (7th Cir. 2006) ("That the judge relied on hearsay is normal and appropriate in sentencing.") Rather, the hearsay presented here lacks even the most basic foundation for the court to be assured that the documents are what they purport to be, much less that anything the court can glean from those documents represents the extent of any victim's losses. For example, there is evidence that Narvett occasionally paid back certain sums to his victims. Thus, simply tallying all the transactions reflected in the documents submitted will not necessarily reflect a victim's losses. Without a reliable evidentiary basis for a victim's claim, the government has failed to sustain that claim by a preponderance of the evidence. Therefore, the court finds that it must reject the claims of Anderson, Cole, Thern, and Romenesko except to the extent that Narvett has explicitly conceded any portion of these individuals' claims.

The court also received a one-page spreadsheet (ECF No. 73-4), but it is not identified as being associated with any specific victim. Nor is it authenticated by any testimony, affidavit, or declaration. Therefore, the court must disregard it.

## 5. Individual Victims

### 5.1. Darla Meshke

Darla Meshke submitted documents and testified at the hearing. She reports that she suffered losses of $747,015.00, which is comprised of $475,512.00 she provided to Narvett, as well as fees incurred as a result, and $271,503.00 in interest on promissory notes that she entered into with Narvett that he has not paid. (ECF No. 73 at 1.)

Meshke provided 87 pages of documents, including spreadsheets she prepared outlining her losses. (ECF No. 73.) The court has compared those spreadsheets with the supporting documents she has provided.

Meske is not entitled to the $271,503 which she contends is unpaid interest on promissory notes she made to Narvett. Although restitution may appropriately include prejudgment interest to account for the loss of the fund's capacity to grow, *see United States v. Shepard*, 269 F.3d 884, 886 (7th Cir. 2001) (citing 18 U.S.C. § 3663A(b)(1)(B)(i)(II)); *United States v. Stanelle*, 184 F. Supp. 2d 854, 857 (E.D. Wis. 2002); *see also United States v. Robers*, 698 F.3d 937, 948 (7th Cir. 2012) (quoting *United States v. Yeung*, 672 F.3d 594 (9th Cir. 2012)), the interest that Meshke seeks constitutes impermissible expectation damages, *see United States v. Qurashi*, 634 F.3d 699, 704 (2d Cir. 2011).

Aside from the objections rejected above, Narvett largely concedes (or at least does not object to) Meshke's claim. With respect to one transaction—the purchase of gold coins—he does not explicitly object, although he concedes only a portion of the

total. He concedes that Meshke is entitled to restitution of $13,869.63 for this purchase. (ECF No. 84 at 4.) However, that figure is merely the subtotal reflected on the receipt provided by Meshke. (ECF No. 73 at 45.) With tax and "Con. Fee" the total was $15,000. (ECF No. 73 at 45.) Even if the fair market value of the coins was only $13,869.63, "[r]estitution must be based on the victim's loss rather than the offender's gain." *United States v. George*, 403 F.3d 470, 474 (7th Cir. 2005). Because $15,000 represents the loss to Meshke, she is entitled to that full sum.

As for the remainder of her claim, Meshke has provided cancelled checks totaling $160,600 that she made payable to Narvett or his son. (ECF No. 73 at 2-23.) She has also provided evidence of $47,620 in wire transfers and wire transfer fees that she testified were to Narvett. (ECF No. 73 at 24.) The court's calculations differ slightly from those reflected on Meshke's spreadsheets (ECF No. 73 at 1, 4), which is attributable to the fact that Meshke did not always include the fees she incurred for wire transfers (which are properly included as losses that she incurred), and her figures include a $500 payment to Lending Club that the court finds to be insufficiently supported by the documents and testimony provided.

The government has proven and Narvett has concedes (ECF No. 84 at 4) that Meshke provided Narvett $159,000, which was withdrawn from her IRA and documented in two promissory notes, for $80,000 and $79,000. (ECF No. 73 at 47, 76-77, 80-81.)

As a result of Narvett's actions, Meshke also took out a home equity loan, which resulted in her incurring $20,409.77 in interest. (ECF No. 73 at 61-67.) She also incurred tax penalties for early withdrawals from her retirement accounts. Meshke testified that this sum was $13,705. (*See also* ECF No. 73 at 39.)

Meshke, however, has not adequately supported her spreadsheet entry for $1,967 in credit card interest regarding the purchase of the gold coins. The court has not identified any document or testimony to support that figure. Nor has the government sustained its burden to show that the line items identified by Meshke as "missed loan payments" in the amount of $22,781 and "Sunwest / Millennium annual fees" (ECF No. 73 at 1) are losses incurred by Meshke that are compensable under the MVRA. Therefore, the court must exclude these sums.

In total, the government has shown by a preponderance of the evidence that Meshke sustained losses of $416,334.77 as a result of Narvett's scheme.

### 5.2. Luke and Karen Weinschrott

Luke and Karen Weinschrott submitted detailed records of the money they gave to Narvett. (ECF No. 74-3.) Luke also testified at the restitution hearing.

Narvett does not object to the Weinschrotts' claims for $85,799.91. (ECF No. 84 at 5 (citing ECF No. 74-3 at 9-12.) As to the remainder, Narvett argues, "The balance of the documents submitted do not support the claims of the Weinschrotts." (ECF No. 84 at 5-6.) He does not elaborate.

The court disagrees, and finds that the government has sustained its burden with respect to the remainder of the Weinschrotts' claim. Luke Weinschrott provided evidence of $111,000 in cash withdrawals and testified that he provided that cash to Narvett. (ECF No. 74-3 at 7-8, 13.) The Weinschrotts also demonstrated that they incurred tax penalties as a result of having withdrawn money from retirement accounts at Narvett's insistence. According to a letter submitted by a CPA, the difference between what the Weinschrotts would have owed without the withdrawal and what they owed with the withdrawal is $28,941 in federal taxes and $7,616 in state taxes, for a total of $36,557.

The Weinschrotts acknowledge that Narvett paid back $22,631. Therefore, the government has shown by a preponderance of the evidence that the Weinschrotts sustained a total loss of $210,725.91 as a result of Narvett's scheme.

**5.3. Jody Aschenbrenner**

Jody Aschenbrenner submitted 27 pages of documents that begin with a signed Declaration of Victim Losses in which she explains that she gave Narvett $53,000, of which he repaid $13,000. (ECF No. 74-1 at 1.) Aschenbrenner's claim is supported by a March 21, 2016, email from Narvett to Aschenbrenner (ECF No. 74-1 at 2, 3) and Aschenbrenner's testimony at the hearing.

Narvett concedes that Aschenbrenner is entitled to restitution in the amount of $40,000. (ECF No. 84 at 3.) Consequently, the court finds that a preponderance of the evidence supports that Aschenbrenner is entitled to $40,000 in restitution.

**5.4. Kimberly Roach**

Kimberly Roach submitted a signed Declaration of Victim Losses claiming that she suffered losses in the amount of $55,000. (ECF No. 74-2 at 3.) She also submitted a Victim Impact Statement and a page of handwritten notes. (ECF No. 74-2 at 4-7.)

Narvett notes that "there is no verification to support her assertion …." (ECF No. 84 at 3.) Further, "It is unclear whether any theoretical amounts given to the defendant by Ms. Roach were after the indictment offense date." (ECF No. 84 at 3.)

Roach's sworn statement supports her claim that she sustained losses of $55,000 as a result of Narvett's scheme. There is nothing to support Narvett's speculation that any portion of the funds were given to him "after the indictment offense date." Roach's statements are clear that the two transactions occurred in 2014 and 2015. (ECF No. 74-2 at 3-4, 7.)

The government having shown by a preponderance of the evidence that Roach sustained losses of $55,000 as a result of Narvett's scheme, Roach is entitled to that sum in restitution.

**5.5. Bruce and Sandra Miller**

Bruce and Sandra Miller submitted a Victim Impact Statement, signed under the penalties of perjury, alleging that they lost $428,133 to Narvett. (ECF No. 75 at 1.)

Narvett does not object to $226,000 of the Millers' claim. (ECF No. 84 at 2 (citing ECF No. 75 at 8, 10-11, 15-16).) He speculates that other documents may be duplicative and asserts that "[t]he claimed amount of $420,000 is unsubstantiated."

The Millers' $420,000 claim is substantiated by the payment agreement that Narvett signed with Bruce Miller on December 8, 2019. (ECF No. 75 at 3.) The court's review of the remainder of the documents submitted, however, cannot discern a basis for extra $8,133 of the Millers' claim. Accordingly, the court finds that the government has sustained its burden to show by a preponderance of the evidence that the Millers are entitled to restitution of $420,000.

**5.6. Denise Anderson, Taylor Cole, Timothy Thern, and Bruce Romenesko**

As noted above, the court lacks a sufficient evidentiary basis to sustain the claims of Denise Anderson, Taylor Cole, Timothy Thern, and Bruce Romenesko. Nonetheless, Narvett has conceded the following:

Denise Anderson: $2,250 (ECF No. 84 at 5 (citing ECF No. 74 at 18).)

Taylor Cole: $15,000 (ECF No. 84 at 3 (citing ECF No. 74-4 at 2).)

Timothy Thern: $7,000 (ECF No. 84 at 3 (citing ECF No. 74-5 at 22-28).)

Bruce Romenesko: $175,225 (ECF No. 84 at 6-7 (citing ECF No. 73-1 at 8, 10-18, 36, 38, 40-41, 48, 50, 52-53).)

## 6. Conclusion

Having considered the submissions of the parties and the testimony at the evidentiary hearing, the court finds that restitution is appropriate as follows:

| Victim: | Judgment Amount: | Amount Proven at Restitution Hearing: | Additional Restitution Proven: | Total Restitution: |
|---|---|---|---|---|
| Denise Anderson | $236,675.45 | $2,250 | $0 | $236,675.45 |
| Bruce and Christine Romenesko | $41,225.84 | $175,225 | $133,999.16 | $175,225 |
| Cherri and Tim Thern | $38,357.10 | $7,000 | $0 | $38,357.10 |
| Bruce and Sandra Miller | $362,105.00 | $420,000 | $57,895.00 | $420,000 |
| Darla Meshke | $194,215.00 | $416,334.77 | $222,119.77 | $416,334.77 |
| Luke and Karen Weinschrott | $54,894.06 | $210,725.91 | $155,831.85 | $210,725.91 |
| Estate of Adam Smakosz | $75,750.00 | $0 | $0 | $75,750 |
| Taylor Cole | $0 | $15,000 | $15,000 | $15,000 |
| Jody Aschenbrenner | $0 | $40,000 | $40,000 | $40,000 |
| Kimberly Roach | $0 | $55,000 | $55,000 | $55,000 |
| **TOTAL:** | | | | **$1,683,068.23** |

**IT IS THEREFORE RECOMMENDED** that Narvett be ordered to pay restitution as set forth in this report and recommendation.

**IT IS FURTHER ORDERED** that, in accordance with 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), any written objection to any recommendation herein or

part thereof shall be filed within fourteen days of service of this recommendation. Failure to timely object waives a party's right to review.

Dated at Milwaukee, Wisconsin this 24th day of April, 2023.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge